Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4937 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Donna L. Kaminski vs. Freight-A-Ranger, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Freight-A-Ranger's and JFN Dissolution Corp.'s motion for summary judgment [12-1] is granted. The remaining state-law claims against all defendants are dismissed for lack of subject-matter jurisdiction. Defendant Nettles's motion for summary judgment [11-1] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: RJ/ea

Date docketed: SEP 30 2002

Document Number: 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
SEP 3 0 2002

| | | |
|---|---|---|
| DONNA L. KAMINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 4937 |
| | ) | |
| v. | ) | |
| | ) | |
| FREIGHT-A-RANGER, INC., et al. | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna Kaminski has sued her former employer, Freight-A-Ranger, Inc., now doing business as JFN Dissolution Corp. II, Inc. (collectively, "Freight-A-Ranger"), and former supervisors, James F. Nettles and Gregory B. Fischer.[1] Defendants Freight-A-Ranger and Nettles have each moved for summary judgment. For the reasons set forth below, the court grants Freight-A-Ranger's motion and dismisses the remaining claims for lack of subject-matter jurisdiction.

## Background

The following facts are undisputed. Kaminski was employed with Freight-A-Ranger from July 1983 to April 10, 2001. She held the position of Account Manager. Defendant Fischer was secretary of the Board of Directors and chief financial officer at Freight-A-Ranger, as well as Kaminski's direct supervisor. They both worked at the facility located at 5500 West 47th Street in Chicago ("47th Street facility"). On or about August 1999, Kaminski and Fischer began a dating relationship. It was the third relationship of its kind between them.

---

[1] Kaminski and Fischer entered into a settlement agreement and this court dismissed with prejudice all claims against Fischer on April 16, 2002.



In January 2000, Kaminski ended her romantic relationship with Fischer. On the day of the break-up, Fischer followed Kaminski to her car and they argued. Fischer wanted to rekindle the relationship and sent Kaminski numerous e-mails at their workplace. On February 14, 2000, Fischer sent Kaminski flowers and a note asking why she had ended the relationship. On March 13, 2000, Fischer wrote another e-mail to Kaminski indicating his desire to restart the relationship.

On March 23, 2000, the situation escalated. Fischer sent an e-mail to Kaminski stating that his life was thrown into an "absolute complete disaster, and it is a struggle every day just to get through it." (Pl.'s Ex. 14.) He later sent another e-mail in which he told Kaminski that "under these circumstance [sic] and how you have handled the end of our relationship, I don't see how we can work together. You have done all of this." (Pl.'s Ex. 16.) In a follow-up e-mail he asked Kaminski if she was going to find another job. Next, Fischer entered Kaminski's office and told her he loved her. When she refused to discuss the matter with him, he called her a "cold-hearted bitch." (Fischer Dep., Pl.'s Ex. 1, 129:7.) Kaminski claims that Fischer then "grabbed Kaminski so hard that it left a visible mark and thereafter a bruise." (Pl.'s Resp. Freight-A-Ranger's Mot. at 8.) (Fischer claims that he was losing his balance when he grabbed her arm because Kaminski had tried to punch him.) Kaminski reported the incident to the police.

On March 24, 2000, Kaminski reported the incident to defendant Nettles, the president of Freight-A-Ranger. The next day, Fischer was transferred to another facility in Elk Grove Village, Illinois. Nettles took other corrective action against Fischer, including stripping Fischer of his managerial responsibilities, CEO title, position on the Board, and stock options. Nettles also revoked Fischer's executive contract and placed him on a one-year probation. Finally,

Nettles required that all of Fisher's future communications to Kaminski were to be only via e-mail and that Kaminski would report only to Nettles—not Fischer. However, Fischer was otherwise still in daily contact with Kaminski, continued to supervise her work, and would sometimes return to the 47th Street facility. On March 28, 2000, a Criminal Order of Protection was entered in favor of Kaminski and against Fischer. On May 30, 2000, the Criminal Order of Protection was extended to May 29, 2001.[2]

On or about November 15, 2000, Nettles told Kaminski that Fischer would return to the 47th Street facility, due to a corporate consolidation. The consolidation resulted from the expiration of the Elk Grove Village facility lease. Furthermore, because of new space configurations, there was no place to put Fischer in the new facility being built near O'Hare Airport. Kaminski claims that when Nettles informed her of the corporate consolidation, Nettles hurled profanities at her and told Kaminski to get over the incident with Fischer. However, she admits that Nettles told her that when Fischer ever relocated, Nettles would make sure that Fischer was located at the opposite side of the plant, and she admits that Nettles attempted to allay her fears about working in the same location with Fischer. In late March or early April, Nettles told Kaminski that Fischer would permanently return to the 47th Street facility in May 2001. The Criminal Order of Protection was still in effect through May. On April 10, 2001, Kaminski resigned.

In her five-count complaint, Kaminski brings one Title VII claim and four state-law claims. In Count I, she charges Freight-A-Ranger with both sex discrimination and retaliation in

---

[2] Freight-A-Ranger points out that the Criminal Order of Protection did not cover the workplace.

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. In Counts II through IV, she charged Fischer with assault, battery, and false imprisonment, respectively. She brings the same claims against Freight-A-Ranger on a theory of vicarious liability. Finally, in Count V, Kaminski charges all defendants with intentional infliction of emotional distress. This is her only claim against Nettles in his individual capacity.

**Standard of Review**

Summary judgment is proper "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court evaluates the admissible evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

**Discussion**

Both Freight-A-Ranger and Nettles move for summary judgment. With respect to the Title VII claim, Freight-A-Ranger argues that Kaminski has failed to establish either a hostile work environment or retaliation, and that it cannot be held vicariously liable for Fischer's actions. With respect to the state-law claims, Freight-A-Ranger argues that the conduct at issue in this case does not rise to the level of assault, battery, or false imprisonment, and that Freight-

4

A-Ranger cannot be held liable on a theory of vicarious liability. Nettles moves for summary judgment on the one claim against him: intentional infliction of emotional distress. He argues that his statements to Kaminski that Fisher would return to the 47th Street facility cannot give rise to such a claim.

**I. Hostile Work Environment**

Title VII of the Civil Rights Acts of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "[F]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The test is both objective and subjective. *Silk v. City of Chicago*, 194 F.3d 788, 805 (7th Cir. 1999). That is, the work environment must be one that a reasonable person would find hostile or abusive and that this particular employee subjectively perceived it this way. *Id.*

"[E]mployers are vicariously liable for hostile environment [sexual] harassment by supervisors (subject to certain defenses)." *Id.* at 804 (internal citations omitted). In this case, it

is undisputed that both Fischer and Nettles were Kaminski's supervisors during the events in question. Thus, if the court concludes that the discriminatory conduct created an abusive working environment, Freight-A-Ranger may be liable.

Defendants argue, among other things, that Fischer's and Nettle's conduct cannot constitute sexual harassment because it was not based on sex. The court agrees.

A. Based on Sex

To establish herسexual harassment claim under Title VII, Kaminski must show that any discrimination against her was because of her "being a woman or belonging to a different gender from her tormentor." *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996), *overruled in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061 (2002). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

The Seventh Circuit does not allow sexual harassment claims where the conduct at issue stems solely from the harasser's animosity arising from a failed romantic relationship. *Galloway*, 78 F.3d at 1168 ("The repetition of the term ["sick bitch"] together with the other verbal conduct that is alleged reflected and exacerbated a personal animosity arising out of the failed relationship rather than anything to do with a belief by [defendant], of which there is no evidence, that women do not belong in the work force or are not entitled to equal treatment with male employees."); *see also Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (affirming district court's grant of summary judgment and holding that defendant's "harassment of Plaintiff was not the result of Plaintiff's gender but of responses to an individual because of

6

her former intimate place in [that individual's] life") (internal quotation marks omitted) (quoting *Keppler v. Hinsdale Township High Sch. Dist. 86*, 715 F. Supp. 862, 869 (N.D. Ill. 1989)); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) ("Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination. . . . The plaintiff cannot turn a personal feud into a sex discrimination case.") (internal quotation marks omitted).

In this case, Kaminski was subjected to alleged abuse from someone with whom she had a previous relationship, she was made the target of one harsh comment ("cold hearted bitch"), and she was the sole victim of the alleged harasser. Applying relevant Title VII case law, Kaminski cannot show that she was the victim of sexual harassment. It is clear that Fischer's e-mails to Kaminski, their argument on March 23, 2000, and even Fischer's alleged assault on Kaminski stemmed from Fischer's personal animosity arising from their failed romantic relationship. There is no evidence indicating that Fischer's hostility toward Kaminski was motivated by anything other than personal animosity arising from the failure of their relationship. Assuming Fischer's alleged actions truly took place, they are reprehensible and perhaps actionable. However, to succeed under Title VII Kaminski must show more than evidence that she was mistreated by someone who was very angry with her. She must show that her mistreatment was the result of her being a woman. No reasonable jury could find such evidence here.[3]

---

[3]Kaminski has not claimed *quid pro quo* sexual harassment, a distinct form of sexual harassment, in either her complaint, any subsequent pleadings, or her memoranda opposing defendants' motions for summary judgment. *Quid pro quo* sexual harassment occurs when "an employer expressly or impliedly makes sexual favors a condition for the employee to receive or retain job benefits, or deprives the employee of job benefits on the basis of the employee's

7

Kaminski argues that Fischer's use of the term "cold hearted bitch" is a derogatory term for women and should preclude summary judgment. The court disagrees. In this case the term "bitch" was used as a pejorative term for a woman, not to reference Kaminski's sexual habits or in any other way sexually harass her. *See Galloway*, 78 F.3d at 1168 (concluding that the term "bitch" "does not necessarily connote some specific female characteristic, whether true, false, or stereotypical; it does not draw attention to the woman's sexual or maternal characteristics or to other respects in which women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect"). "Even if [the accused harasser] didn't abuse any men, there would not be an automatic inference from his use of the word 'bitch' that his abuse of a woman was motivated by her gender rather than by a personal dislike unrelated to gender." *Galloway*, 78 F.3d at 1168. It seems reasonably clear from context that Fischer's "cold-hearted bitch" comment was motivated by personal rather than gender based animus. But even if the remark could be construed as sexist, "mere utterance of an . . . epithet which engenders offensive feelings in a employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21.

Kaminski argues that it is the totality of the conduct of *both* Fischer and Nettles that gives rise to a hostile work environment claim under Title VII. Regarding Nettles's actions, Kaminski first complains that Nettles made light of her relationship with Fischer to other employees and otherwise belittled her about the situation. She was asked to specify at her deposition by Freight-

---

refusal to engage in sexual relations." *Keppler v. Hinsdale Township High Sch. Dist. 86*, 715 F. Supp. 862, 866 (N.D. Ill. 1989). It appears that she attempts to use evidence that Fischer implied that she should leave the company as a result of their failed relationship. However, these facts are mentioned nowhere in the complaint, which otherwise makes no indication of a *quid pro quo* claim.

8

A-Ranger's counsel how she felt that Nettles had sexually discriminated against her. She answered: "In regards to the incident [on March 23, 2000] and his comments regarding the things that-Well, I guess that's not sexually related, but his insensitivity about the situation where he made a joke about it." (Kaminski Dep., Oct. 5, 2001, Defs.' Ex. 2 at 106:24-107:4.) When asked about the joke, Kaminski stated: "I would have to say there were a couple instances, but when Mr. Fischer started a dating relationship with another employee, he was like—He actually said that he was sick." (*Id.* at 107:6-9.) "I don't remember exactly what the words are, and I had told him—him and [another employee] had made some kind of remark and I took offense to it and I said I didn't think it was funny and then when he saw my seriousness about it, that's when he said that [Fischer] was sick." (*Id.* at 107:19-24.) She continued: "If I had a complaint of any nature regarding like the e-mails or things got to be too much, his comment to me would be, you're as much at fault here as he is." (*Id.* at 109:4-7.) She recalled that these remarks were after March and before November 2000. She also testified that these remarks by Nettles could be sexual discrimination "[b]ecause I, just being the accounting manager, versus [Fischer] of the male nature, having a college degree, and having so much-being such an asset to the company was belittling me as a woman and my education background. To me, the whole thing, I could be replaced." (*Id.* at 113:24-114:5.)

Next, Kaminski complains about Nettles's decision (and more importantly, the manner in which he informed Kaminski) that Fischer would return to the 47th Street facility. On November 15, 2000, Nettles sent Kaminski an e-mail in which he expressed that he "was surprised to see Greg [Fischer] here today and you not here. I understand why you're not here, but in the future, I want to know what your plans are for making up the time?" (Pl.'s Ex. 21.) Kaminski responded

9

via e-mail that she did not feel that she should have to make up her time. She testified that after Nettles read her e-mail, he called her into his office and asked her to close the door. When she did, "he told me, you better get off your fucking high horse, and that's when he told me that he was bringing Greg back in March. In four months I had to make a decision, either put this whole thing behind me, but I had four months to make a decision as to what I wanted to do, and who the fuck did I think I was telling him I'm not going to make up my time." (*Id.* at 20:13-20.)

On December 4, 2000, Fischer sent Kaminski the following e-mail: "The computer person from GPS will be at 47th Street on Tue and Wed December 12th and 13th. I will need to be with her both those days. I'm not sure if it will be for the whole day or what. Please confirm that you received this message." (Defs.' Ex. 8, 11.) Nine minutes later, Nettles sent the following e-mail to Kaminski: "Donna: You can either hole up in your office while Greg is here or come in after he leaves. The third option would be to finally try and put this whole thing behind you. I understand how you feel towards Greg, but I do have a business to run and I will make sure he steers clear of you while he is here if that's a concern." (*Id.*)

None of Nettles's conduct could lead a rational trier of fact to conclude that he had sexually harassed Kaminski or otherwise discriminated against her based on her sex. As for Nettles's joking about her relationship with Fischer, Kaminski admits that it was not sexually related, and otherwise provides no evidence to indicate that Nettles's comments constitute sexual harassment. The most likely candidate for evidence of mistreatment is Nettles's alleged profane tirade on November 15, 2000 during which he told Kaminski to "get off [her] fucking high horse," that he would transfer Fischer back to the 47th Street facility in March, that she had four months to put the situation behind her and decide what she would do, and "who the fuck did

10

[she] think [she] was telling him [she's] not going to make up [her] time." (Kaminski Dep., Oct. 5, 2001, Defs.' Ex. 2 at 20:13-20.). But nothing here suggests sexual discrimination. It perhaps shows that Nettles was becoming frustrated with the tense relationship between Kaminski and Fischer. However, Kaminski has provided no evidence to suggest that Nettles's profanities or his decision to transfer Fischer was motivated by the fact that Kaminski is a woman. Freight-A-Ranger's motion for summary judgment is granted with respect to the sexual harassment claim.

## II. Retaliation

To establish a prima facie claim for retaliation a plaintiff must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; (3) she was subjected to an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in such protected activity. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002). If Kaminski establishes a prima facie case, the burden shifts to Freight-A-Ranger to produce a legitimate nondiscriminatory reason for the adverse action. *Id.* at 644. "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, [it] is entitled to summary judgment. Otherwise there must be a trial." *Id.* "Establishing a causal link between the protected expression and adverse employment action is not required under the [burden-shifting] method [of proof]." *Nielsen v. Acorn Corrugated Box Co.*, No. 01 C 1988, 2002 WL 1941365 (N.D. Ill. Aug. 21, 2002) (citing *Stone*, 281 F.3d at 644).[4]

---

[4]The Seventh Circuit decided *Stone after* Freight-A-Ranger moved for summary judgment. Because *Stone* introduced a new analysis for retaliation claims, Kaminski has not attempted to point to any similarly situated employees who were treated more favorably than she. The change in law does not matter here because, even assuming Kaminski establishes a prima facie case, she fails to rebut Freight-A-Ranger's nondiscriminatory reasons for any adverse

11

Kaminski points to two different events that would show the first element of a prima facie case: (a) her November 15, 2000 e-mail complaining to Nettles about Fischer's temporary visits to the 47th Street facility; and (b) her EEOC charges. She claims that the adverse employment action is Nettles's decision to transfer Fischer back to the 47th Street location.

A. <u>November 15 E-mail</u>

Statutorily protected expression generally includes any opposition to an unlawful employment practice. *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706 (7th Cir. 2000). "[O]ur cases hold that an employee may engage in statutorily protected expression under section 2000e-3(a) even if the challenged practice does not actually violate Title VII." *Id.* "It is sufficient if the plaintiff has a sincere and reasonable belief that he is opposing an unlawful practice." *Id.* at 706-07. "That means, for example, that even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employer fires because of the complaint, the retaliation claim could still be valid." *Id.* at 707. However, in order for the employer to retaliate, it must be aware of the employee's statutorily protected expression. *McKay v. Town & Country Cadillac, Inc.*, No. 97 C 2102, 2002 WL 664024, at *10 (N.D. Ill. Apr. 23, 2002). If the employer did not, and reasonably could not have understood that the plaintiff's opposition was directed at conduct prohibited by the statute, then any adverse employment action cannot constitute retaliation. *Id.*

On November 15, 2000, Nettles sent Kaminski the e-mail in which he asked how she would make up her time when she was absent from work because Fischer was present. Kaminski responded: "I feel that if Greg needs to come here then perhaps he should clear it with you in the

---

employment action.

12

future. I don't feel that's my responsibility. I also don't feel that I should have to arrange my schedule to accommodate Greg. Perhaps he should come in after hours if he needs to do anything here. I will not make up the time for yesterday. I don't feel I should have to." (Pl.'s Ex. 21.)

This is not statutorily protected activity. Kaminski points to no facts that could possibly lead a jury to conclude that Nettles would perceive this e-mail to be a complaint about sexual harassment or sexual discrimination. Nettles testified in his deposition that Kaminski did *not* make a complaint to him of sexual harassment after the incident on March 23, 2000. "She never said it was sexual harassment." (Nettles' Dep., Defs.' Ex. 21, at 154:21-22.) Kaminski has provided no evidence to rebut this testimony. In fact, at her own deposition, Kaminski admitted that she understood Freight-A-Ranger's sexual harassment policy. She testified that she did not invoke the policy by asking for an investigation from the company regarding Fischer's conduct. This court has already concluded that Fischer's conduct did not constitute sexual harassment. Without an express complaint by Kaminski, Nettles cannot reasonably be expected to have presumed that her e-mail to him was a complaint about discrimination. From this record, it is clear that Kaminski never complained to Nettles about sexual harassment.

B. <u>EEOC Charge</u>

On December 12, 2000, Kaminski filed a charge of discrimination with the EEOC alleging sexual harassment against Freight-A-Ranger. (Compl. Ex. A.) There can be no dispute that the EEOC charge satisfies the first prong of the test. In her complaint, Kaminski alleges that "[o]n or about December, 2000, Nettles received notice that Kaminski filed a charge with the EEOC regarding the events herein." (Compl. ¶ 24.) "Afterward, Nettles and Fischer engaged in

13

a course of conduct in retaliation for Kaminski exercising her federally protected rights." (*Id.*)

Kaminski argues that "forcing Kaminski to work under the supervision of her attacker, as well as relocating him to her work location, could be deemed 'adverse' under case law." (Pl.'s Resp. Freight-A-Ranger's Mot. Summ. J. at 12.) This contention is dubious at best but even if this court accepts that Kaminski has satisfied *every* requirement of a prima facie case, it must still grant Freight-A-Ranger's motion for summary judgment because Kaminski fails to show that its legitimate nondiscriminatory reason for the employment action is pretextual.

Freight-A-Ranger claims that the actual reason that Nettles decided to transfer Fischer back to the 47th Street facility was that the company was engaging in a corporate consolidation and he had no choice. This reason is facially legitimate, so the burden shifts back to Kaminski to establish that it was a "pretext" for discrimination. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). Kaminski "may establish pretext with evidence that the defendants were more likely than not motivated by a discriminatory reason or that their explanations are not worthy of credence, *i.e.*, they are factually baseless, did not actually motivate the defendants, or were insufficient to motivate the adverse employment action." *Id.* "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *Id.* (quoting *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir.1995)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

Kaminski has failed to show pretext. First, she does not dispute that Freight-A-Ranger

14

was in fact experiencing a corporate consolidation and otherwise provides no evidence that the reason offered by Nettles for Fischer's return is a lie. Moreover, Kaminski fails to point to any evidence that would suggest that Nettles was motivated by a desire to retaliate against Kaminski for filing her EEOC charge. The only incident to which Kaminski refers *after* December 2000, when she filed her EEOC charge, is the following exchange between Kaminski and Nettles: "In Late March/early April, 2001, Kaminski went in to Nettles' office and asked if Fischer would still be returning to 47th street. Nettles replied 'yes.' Kaminski then resigned from her employment. Nettles states he was sorry the situation turned out this way." (Pl.'s Statement Add'l Facts ¶ 140.) Without more evidence, the court cannot reasonably infer that Nettles's decision to transfer Fischer was motivated by discriminatory intent. The motion for summary judgment is granted as to the retaliation claim.[5]

---

[5] Although not expressly set out in her complaint, Kaminski attempts to raise a constructive discharge claim against Freight-A-Ranger. A constructive discharge "occurs when an employee's *discriminatory* working conditions become so intolerable that a reasonable person in her position would be compelled to resign." *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998). "In other words, an employee can be constructively discharged only if the underlying working conditions were themselves unlawful (i.e., discriminatory in some fashion)." *Id.* In this case, Kaminski points to the impending return of Fischer to the 47th Street facility as the sole reason for the intolerable conditions at her job. She concedes that before she resigned, Fischer had not yet returned. It is undisputed that Nettles told Kamisnki that if Fischer relocated, he would try to separate them in the workplace. Even if the court were to accept that a reasonable employee would have been motivated to resign under similar circumstances, Kaminski has provided no evidence to indicate that the reasons for her departure were discriminatory. *See Sweeney*, 149 F.3d at 558 (rejecting plaintiff's constructive discharge claim because "we already have determined that her working conditions were not discriminatory—specifically, there is insufficient evidence that they existed in retaliation for her EEO complaint, and no evidence of an actionable hostile environment").

## Conclusion

For the foregoing reasons, the court grants summary judgment as to Count I. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Counts II through V, the remaining state-law claims. This action is hereby terminated.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATE: September 30, 2002